## KNAPP v. ATLANTIC MACH. WORKS.

### (Circuit Court, D. Maryland.   August 24, 1908.)

1. PATENTS—INFRINGEMENT—CAN LABELING MACHINE.
   The Cornell and Knapp patent, No. 561,656, for an improvement in can labeling machines, *held* valid, and infringed as to claims 2, 3, and 5.

2. SAME.
   The Cornell patent, No. 514,705, for an improvement in can labeling machines, *held* valid, but not infringed.

3. SAME—ANTICIPATION.
   The Cornell patent, No. 612,825, for a can labeling machine, claim 1 *held* valid and infringed. Claim 6, for an expansible follower to press and hold the label against the can while it is being pasted, *held* void for anticipation.

In Equity.   On final hearing.

L. S. Bacon and Bacon & Milans, for complainant.

E. Oliver Grimes and Arthur Stewart, for defendant.

MORRIS, District Judge.   This is a bill in equity, in usual form, for injunction and account for infringement of certain patents belonging to the complainant, all relating to improvements in can labeling machines.   The defense is noninfringement and nonvalidity of the complainant's patents.

The patents in suit are: First. Patent No. 561,656 to E. W. Cornell and Frederick H. Knapp, dated June 9, 1896, for improvement in can labeling machines.   Second. Patent No. 514,705 issued to E. W. Cornell, dated February 13, 1894, for an improvement in can labeling machines.   Third. Patent No. 612,825 issued to E. W. Cornell October 25, 1898, for a can labeling machine.   The devices intended to be covered by these three patents are combined in an automatic labeling machine manufactured by the complainant, by which cylindrical cans for hermetically preserved goods which are delivered either empty or filled into one end of the machine, and are delivered from the other end with labels properly pasted upon them.   This, the proofs show, is done by complainant's machine with great rapidity and accuracy, so that the machine is a notable commercial success.

In the first patent, No. 561,656, infringement is alleged of claims 2, 3, and 5.   Claim 5 is for the combination of the feed disks and the

conveyer mechanism, by which greater speed is given to the conveyer than to the feed disks, so that the cans as fed into the machine are automatically spaced apart while being carried through the machine. The cans, as they roll down the inclined runway into the machine, come in contact with a revolving disk which controls the motion of the can, and makes it revolve slowly, and holds it back until it comes in contact with a more rapidly moving conveyer which carries it rapidly forward. By this difference of speed between the feeding disks and the conveyer, the cans are spaced apart so that they do not interfere with each other during the pasting process which follows. This method of feeding the cans has proved successful in operation. The devices are fully described in complainant's patent and are substantially the same as in defendant's machine. I think the device was patentable and is infringed by defendant's construction.

The cans so spaced are carried along the runway by an endless feed belt, and by coming in contact with a paste roll they have applied to them a coating of paste, about an inch wide, running from end to end on the cylindrical side of the can. If, after receiving this strip of paste, the can continued to revolve on the conveyer belt, the paste would come off on the belt. To prevent this, is the purpose of the device claimed in claims 2 and 3 of the first patent. This is accomplished by what are called "keeper rolls," which cause the edges of the endless conveyer belt to tilt so that the edges only of the belt engage with the ends of the cans, and so prevent the face of the feed belt from coming in contact with the paste on the cans. This essential result is obtained in defendant's machine in substantially the same way. And, although it may be said that in complainant's machine the keeper rolls operate to push the edges of the belt down, and in defendant's machine the keeper rolls operate to cause the edges to resist the upward push of the cans, the result is precisely the same and the means employed substantially the same. I think claims 2 and 3 are good, and are infringed.

In the second patent, No. 514,705, the devices are intended to draw the label closely around the can, and to bring the lap end into contact with the zone of paste on the can. It is an ingenious device, which operates very successfully, but is difficult to describe. A rod lies across the receptacle containing the labels, and, as the label is wound around the can, the rod keeps the label tight and pulls the lap end from the paste, so that, with the paste which adheres to it, it laps over the opposite end of the label and is secured to it. This rod is controlled by a spring which forces it as soon as it is released from the label on the can to return to its original position across the next label. It is called an "oscillating rod" on account of this movement. The defendant's rod is differently affixed to the machine, and serves a different purpose. Its purpose is simply to exert a slightly holding pressure on the label as it is being taken up by the can. The paste on the lap end of the label in defendant's machine is not obtained from the can by being run over it and drawn out by the rod, but is applied by a belt carrying paste which is applied to the end of the label. The rod does not oscillate, as described in complainant's patent, and does not draw the lap end of the label from the paste on the can. It is fair to

say, therefore, that the rod in defendant's patent does not operate in the same way nor for the same purpose as the complainant's device does, and that there is no infringement of the specific claims of the second patent.

The third patent is No. 612,825, October 25, 1898. This patent claims devices for two separate purposes. The first claim is for a device by which, if an occasional can somewhat longer than the others is fed into the machine, the side rails which guide the cans through the runway will yield and allow the longer can to pass through the machine. This the complainant does by having on one side of the runway a fixed continuous guide rail and on the opposite side a guide rail composed of independent yielding sections. A fixed rail and an opposite yielding rail which permitted a movement backwards and forward was not new; but that did not meet the difficulty of an occasional longer can among a number of cans of normal length. To meet this difficulty, the inventor broke up his yielding rail into a sufficient number of independently movable sections actuated by springs, so that the long can would only displace the section as it came into contact with it, and would not displace the others which would then properly guide the cans of normal length. In my opinion this device discloses an invention that is not shown in any prior device in the art. It is both useful and novel, and is infringed by the device used on defendant's machine.

The sixth claim of the third patent, No. 612,825, is also put in suit by the complainant's bill of complaint. The complainant's machine, for the purpose of supplying the labels to be taken up by the revolving cans, has a package of labels in a receptacle or box just beneath the runway on which the cans are moving. It is necessary that the top label of the package should be evenly presented to the can as it passes over the box. This is done by a movable bottom to the box which is given a step by step movement upward. It is also important that the follower should press upward evenly, and for that purpose should cover the whole under surface of the labels and touch the sides of the box to insure the edges of the label being evenly pressed upward. To accomplish this the follower is made in more than one piece, the outer pieces being forced outwardly by springs, which insure the outer pieces being kept in close contact with the sides of the box.

The claim is as follows:

"6. In a can labeling machine, the combination with a can-runway and the label receptacle located therein, the movable follower or bottom of said receptacle consisting of a series of laterally-adjustable spring-actuated sections substantially as described."

As to the specific device of this claim, I think it is anticipated by two prior patents, viz.: Patent to Rice, No. 59,748, November 20, 1866, for an expansible follower to be used in a tobacco press, made in two pieces, with a spring interposed between them to keep the outer edges of the follower in close contact with the walls of the box in which the follower moves in compressing the tobacco. Patent to Chambers, No. 259,269, June 6, 1882, for a self-adjusting follower for use in hay presses, made to accommodate the varying width of

the box, by making the follower in two pieces, which are expanded against the sides of the box by springs. These two patents show that it was not new to have an expansible follower made in parts and the outer edges pressed firmly in contact with the sides of the box by springs. I am of opinion that the specific device claimed in claim 6 of complainant's patent No. 612,825 was not new.

On the whole case, I am of opinion that the complainant is entitled to a decree in his favor as to the devices which I have sustained. The machine constructed by the complainant combining the devices as to which I have sustained the patented claims has gone, as the proofs show, into most successful use as a practical machine, capable of labeling from 85,000 to 100,000 cans per day, and is recognized as a most meritorious automatic contrivance, which has greatly reduced the cost of labeling, and expedited the work, and has advanced the art to which it is applicable.